UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

MATTHEW VAUGHN and
JENNIFER VAUGHN                                                              PLAINTIFFS

v.                                  Case No. 5:17-cv-05027

WELLS FARGO BANK, N.A, and
DOES 1 through 20                                                            DEFENDANTS

## OPINION & ORDER

Currently before the Court is a Partial Motion to Dismiss (Doc. 8) filed by Defendant Wells Fargo Bank, N.A. ("Wells Fargo") on March 1, 2017. Plaintiffs Matthew and Jennifer Vaughn filed their Amended Response (Doc. 13) on March 22, 2017, and Wells Fargo filed its Reply (Doc. 15) on March 29, 2017. For the reasons stated herein, the Court **GRANTS** Wells Fargo's Partial Motion to Dismiss.

### I. BACKGROUND

According to the Vaughns' Complaint (Doc. 3), they purchased their home at 1557 East Cortland St. in Fayetteville, Arkansas, in 2002 by executing a promissory note and mortgage that was subsequently assigned to Wells Fargo. From the time of their purchase to 2015, the Vaughns did not miss a single mortgage payment. Unfortunately, on December 22, 2014, Matthew Vaughn was in a serious car accident, from which he is still rehabilitating. The medical bills and lost income from this incident caused the Vaughns to deplete their savings by September of 2015, leaving them unable to make their mortgage payments. Accordingly, they began working with Wells Fargo to modify their loan. Despite their continued participation in the loan modification process, the Vaughns received a

1

Notice of Default and Intention to Sell from Wells Fargo's trustee dated April 6, 2016, listing a sale date of June 13, 2016. (Doc. 3-1, pp. 2-3). They then received Amended Notices of Default and Intention to Sell dated: (i) July 11, 2016, postponing the foreclosure sale until August 8, 2016; (ii) September 12, 2016, postponing the foreclosure sale until October 17, 2016; (iii) October 11, 2016, postponing the foreclosure sale until November 14, 2016; and (iv) November 14, 2016, postponing the foreclosure sale until December 12, 2016. (Doc. 3-1). These notices were respectively recorded with the Washington County Circuit Clerk on April 8, 2016; July 11, 2016; September 16, 2016; October 17, 2016; and November 18, 2016. *Id.*

The Vaughns contacted Wells Fargo in response to receiving each of these notices. On each occasion, Wells Fargo assured the Vaughns that their house would not be foreclosed upon while they were in the loan modification process. Despite these assurances, the Vaughns learned from a friend that their house was sold at auction on December 12, 2016. This prompted the Vaughns to file the instant suit in the Circuit Court of Washington County, Arkansas, which Wells Fargo then removed to this Court on February 8, 2017. The Vaughns' Complaint alleges that Wells Fargo violated three provisions of the Arkansas Statutory Foreclosure Act ("ASFA"), violated the Arkansas Fair Debt Collection Practices Act ("AFDCPA"), and violated the Arkansas Deceptive Trade Practices Act; that Wells Fargo committed fraud and constructive fraud; and that the principles of promissory estoppel and equitable estoppel invalidate Wells Fargo's sale of their home.

Wells Fargo filed the instant Partial Motion to Dismiss (Doc. 8) pursuant to Fed. R. Civ. P. 12(b)(6) on March 1, 2017. The Motion contends that the Vaughns' AFDCPA claim

and one of their ASFA claims fail to state claims upon which relief may be granted. Specifically, Wells Fargo argues that the AFDCPA does not apply to it because it is not a "debt collector" as defined by that statute. Wells Fargo also contends that it complied with the ASFA's provisions concerning the postponement of foreclosure sales. The Vaughns' response does not address the former argument, but does take issue with the latter. For the reasons stated herein, the Court agrees with Wells Fargo's interpretation of both statutes, and therefore **GRANTS** its Motion (Doc. 3).

## II. LEGAL STANDARD

To survive a motion to dismiss, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of this requirement is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The Court must accept all of the Vaughns' Complaint's factual allegations as true, and construe them in the light most favorable to them, drawing all reasonable inferences in their favor. *See Ashley Cnty., Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009).

However, the Vaughns' Complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual

enhancement.'" *Id.* In other words, while "the pleading standard that Rule 8 announces does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Id.*

## III. DISCUSSION

Wells Fargo's issue with the Vaughns' AFDCPA claim is straightforward. That Act imposes civil liability on any "debt collector" who fails to comply with its provisions. Ark. Code. Ann. § 17-24-512. The AFDCPA defines "debt collector" as a person "who uses an instrumentality of interstate commerce or the mails in a business whose principal purpose is the collection of debts or who regularly collects or attempts to collect . . . debts owed or due or asserted to be owed or due another." Ark. Code Ann. § 17-24-502(5)(A). For purposes of Ark. Code Ann. § 17-24-507(b)(6)—a subsection of the AFDCPA—the Act also includes in the definition of "debt collector," a person "who uses an instrumentality of interstate commerce or the mails in a business whose principal purpose is the enforcement of security interests." Ark. Code. Ann. § 17-24-502(5)(C). Subsection 507(b)(6) prevents the collection of a debt through the taking or threatened taking of a non-judicial action to effect dispossession of property when: (a) no present right exists to the property claimed as collateral; (b) the collector has no present intention to take possession of the property; or (c) the property is exempt by law from dispossession. *See* Ark. Code Ann. § 17-24-507(b)(6)(A)-(C). This subsection applies, for example, when:

> a debtor owns two cars, a Ford and a Buick, and a creditor has a security interest in the Buick but not in the Ford. The debtor defaults, and the creditor hires [a defendant] to repossess the Buick. If, in order to put more pressure on the debtor to pay, [a defendant] repossessed the Ford as well, it would be violating the statutory provision that [the Court] ha[s] just [summarized].

*Nadalin v. Auto. Recovery Bureau, Inc.*, 169 F.3d 1084, 1085 (7th Cir. 1999) (Posner,

4

C.J.) (interpreting a materially identical provision of the federal FDCPA, 15 U.S.C. § 1692a(6)). Because one of the Vaughns' AFDCPA claims pertains to subsection 507(b)(6), the definition of "debt collector" from subsection 502(5)(C) is also relevant to Wells Fargo's Motion.

The Court has previously addressed the question of whether a mortgage lender, such as Wells Fargo, fits within the former definition of "debt collector." In *Silberstein v. Federal National Mortgage Association*, it remarked that the AFDCPA's definition,

> is materially identical to the federal Fair Debt Collection Practices Act's definition of a debt collector. *See In re Humes*, 496 B.R. 557, 583 n.24 (Bankr. E.D. Ark. 2013); 15 U.S.C. § 1692a(6). And, "[m]any courts hold that mortgage lenders and servicers are not 'debt collectors' under the FDCPA in connection with collecting their own consumer debts as opposed to claims owned by others." *In re Larkin*, 553 B.R. 428, 440 (Bankr. D. Kan. 2016). This includes "FDCPA decisions relating to loan modification offers." *Id.* . . . These holdings are consistent with the plain language of the statute, which requires a "debt collector" to have as its "principal purpose" the "collection of debts," or, that a "debt collector" regularly attempt to collect "debts owed ... or due *another*." Ark. Code Ann. § 17-24-502(5)(A) (emphasis added). Mortgage lenders and services have as their principal purposes originating and servicing mortgage loans, respectively, not collecting debt. And, to the extent that they regularly attempt to collect debt, they are typically collecting debt owed to themselves, not owed to another.

2017 WL 187165, at *2 (W.D. Ark. Jan. 17, 2017). Based on the same reasoning the Court articulated in *Silberstein*, it finds that Wells Fargo is not a debt collector as defined by Ark. Code Ann. § 17-24-502(5)(A).

This Court in *Silberstein* did not, however, determine whether mortgage lenders could fall under the definition of "debt collector" for purposes of subsection 507(b)(6), as the Silbersteins did not allege a violation of that subsection. *See Silberstein*, 2017 WL 187165, at *2 n.2. The Court has accordingly reviewed the case law pertaining to this definition and has found that federal courts interpreting the federal FDCPA have

5

universally, or at least near universally, found "a person . . . in a business whose principal purpose is the enforcement of security interests," to mean repossession agencies. Ark. Code Ann. § 17-24-502(5)(C); *e.g., Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 463–64 (6th Cir. 2013) (opining that the federal FDCPA's analog to Ark. Code. Ann. § 17-24-502(5)(C) applies only to repossession agencies and their agents); *Piper v. Portnoff Law Assocs., Ltd.*, 396 F.3d 227, 236 (3d Cir. 2005) (remarking that if a person's "principal business is the enforcement of security interests, he must comply with the provisions of the [federal FDCPA] dealing with non-judicial *repossession abuses* (emphasis added)); *Nadalin*, 169 F.3d at 1085 (discussing the federal FDCPA's analog to Ark. Code. Ann. § 17-24-502(5)(C) in terms of an automobile repossession company); *James v. Ford Motor Credit Co.*, 47 F.3d 961, 962 (8th Cir. 1995) (noting that, while repossession companies are generally not subject to the federal FDCPA, "a few provisions of the Act subject repossession companies to potential liability when they act in the enforcement of others' security interests"). The Vaughns' Complaint does not allege that Wells Fargo is a repossession company, whose principal business is the enforcement of security interests. Instead, it refers to Wells Fargo as "a national banking association." (Doc. 3, p. 1). For this reason, the AFDCPA does not apply to Wells Fargo, and the Vaughns' AFDCPA claim fails to state a claim upon which relief may be granted.

Wells Fargo's issue with the Vaughns' ASFA claim is more complex. The ASFA sets forth a procedure that a mortgagee and its trustee must follow to foreclose on a mortgage and effect the sale of foreclosed property. This procedure must be "strictly construed" by reviewing courts. *Henson v. Fleet Mortg. Co.*, 319 Ark. 491, 497 (1995). Three aspects of the procedure set forth in the ASFA are particularly relevant to this case.

First, Ark. Code Ann. § 18-50-104(a) states that a "trustee or mortgagee may not sell the trust property unless" it satisfies three conditions. The trustee or mortgagee must first record a "duly acknowledged notice of default and intention to sell" containing certain information specified in subsection 104(b). A time period of at least 60 days must elapse between the recording of the notice of default and intention to sell and the foreclosure sale. If the mortgagor applied for loan modification or forbearance assistance, the mortgagee must notify the mortgagor that he is not eligible for such at least 10 days before the sale. And, the mortgagee must certify to its trustee that it has provided the mortgagor with this notification. Ark. Code Ann. § 18-50-104(a).

The second relevant provision of the ASFA is Ark. Code Ann. § 18-50-104(b). This subsection sets forth the content that the mortgagee's notice of default and intention to sell must include. For example, a notice must include the "names of the parties to the mortgage," a "legal description of the trust property," a conspicuous warning that "YOU MAY LOSE YOUR PROPERTY IF YOU DO NOT TAKE IMMEDIATE ACTION," and the "time, date, and place of sale." Ark. Code Ann. § 18-50-104(b)(1), (2), (5), (6).

Third, Ark. Code Ann. § 18-50-107(c) sets forth the procedure for postponing a foreclosure sale. It provides that a person conducting the sale "may postpone the sale from time to time." *Id.* at (c)(1). In such cases, "notice of postponement shall be given by: (i) Public proclamation thereof by that person; or (ii) Written notice of postponement posted at the time and place last appointed for the sale." *Id.* at (c)(2)(A). "No other notice of the postponement need be given unless the sale is postponed for longer than thirty (30) days beyond the date designated in the notice." *Id.* at (c)(2)(B)(i). If the delay is longer than 30 days, "notice thereof shall be given pursuant to § 18-50-104." *Id.* at (c)(2)(B)(ii).

The Vaughns contend that these provisions required Wells Fargo to wait 60 days from the filing of its last Amended Notice of Default and Intention to Sell, which it recorded on November 18, 2016, to sell their home. Per the Vaughns, the original sale date was June 13, 2016, and any postponement of 30 days past that date triggers the requirements of Ark. Code Ann. § 18-50-107(c)(2)(B)(ii). That provision refers back to Ark. Code Ann. § 18-50-104, which in turn imposes a 60-day delay from the time the mortgagor records a notice of default and intention to sell. Even if Wells Fargo was not required to comply with Ark. Code Ann. § 18-50-107(c)(2)(B)(ii), the Vaughns contend that Wells Fargo's amended notices did not comply with subsection (c)(2)(A)(i)'s "public proclamation" requirement.

Wells Fargo disagrees with this interpretation of the ASFA. It suggests that its course of conduct in this case did not trigger Ark. Code Ann. § 18-50-107(c)(2)(B)(ii). The relevant postponement duration is not from June 13, 2016 to the eventual sale date of December 12, 2016, it contends, but from the most recently scheduled sale date of November 14, 2016 to the postponed date of December 12, 2016. Even if Wells Fargo is incorrect, and Ark. Code Ann. § 18-50-107(c)(2)(B)(ii) applies, that subsection does not incorporate subsection 104's 60-day delay requirement, it suggests. Wells Fargo also believes its Amended Notices of Default and Intention to Sell comply with subsection (c)(2)(A)(i)'s "public proclamation" requirement, such that they can be considered postponement notices.

While the Court believes both parties' positions are reasonable given the statute's unfortunate ambiguities, it ultimately finds that Wells Fargo complied with subsection 107(c). First, the Court finds that the Amended Notices of Default and Intention to Sell

recorded in Washington County by Wells Fargo's trustee constitute "public proclamation[s]" of postponement for the purpose of subsection (c)(2)(A)(i). This finding is based on the plain meaning of the text. The term "public" means "[o]pen or available for all to use, share, or enjoy." *Black's Law Dictionary* 1348 (9th ed. 2009). The term "proclaim" means "[t]o declare formally or officially." *Id.* at 1326. To comply with Ark. Code Ann. § 18-50-107(c)(2)(A)(i), then, the person conducting the sale—in this case, the trustee—must formally or officially declare, in a manner open and available to all, that the sale has been postponed. This is exactly what recording an Amended Notice of Default and Intention to Sell with a county clerk accomplishes.

The next question is whether "the sale [was] postponed for longer than thirty (30) days beyond the date designated in the notice," such that Wells Fargo had to comply with subsection 107(c)(2)(B)(ii). Ark. Code. Ann. § 18-50-107(c)(2)(B)(i). The parties' confusion on this issue derives from an ambiguity in the meaning of the phrase "the notice" as used by subsection 107(c)(2)(B)(i). Where there have been multiple postponements in a foreclosure process, the phrase may refer to the original *notice* of default and intention to sell, or to the most recent *notice* of postponement. This ambiguity is not one the Court need resolve, however, because it finds that even if the relevant postponement period was greater than 30 days, Wells Fargo complied with subsection 107(c)(2)(B)(ii)'s requirement that a notice of postponement for a lengthier delay be given pursuant to Ark. Code Ann. § 18-50-104.

When a foreclosure sale is postponed by more than 30 days, subsection 107(c)(2)(B)(ii) of the ASFA requires that "notice shall be given pursuant to § 18-50-104." According to the Vaughns, this reference to § 18-50-104 encompasses all of the

9

provisions of that subsection, including § 18-50-104(a)(2)'s imposition of a 60-day delay in the sale from the time the notice of default and intention to sell is recorded. Under their reading of the statute, Wells Fargo was required to wait 60 days from November 18, 2016—when its trustee recorded its final postponement notice—to sell their house.

The Court cannot agree with this reading of the statute for two primary reasons. First, the 60-day time period contemplated by § 18-50-104(a)(2) runs from "the recording of the notice of default and intention to sell." In this case, Wells Fargo's trustee recorded that notice on April 8, 2016. The documents filed by Wells Fargo's trustee after that initial notice were effectively notices of postponement, filed pursuant to Ark. Code Ann. § 18-50-107. The relevant time period to calculate the 60-day delay, then, began on April 8, 2016, not on November 18, 2016. Thus, to the extent that § 18-50-107(c)(2)(B)(ii)'s reference to § 18-50-104 encompasses its 60-day delay requirement, Wells Fargo complied with that subsection because it did not sell the Vaughns' house for several months after the original Notice of Default and Intention to Sell was recorded on April 8, 2016.

Second and relatedly, the Vaughns' reading of the ASFA would lead to the absurd result that any delay between 30 and 60 days would be statutorily prohibited. As detailed above, subsection 18-50-107(c)(2)(B) requires that notice for any postponement of over 30 days comply with "§ 18-50-104." If a delay of over 30 days triggers a 60-day delay from the recording of the postponement notice via § 18-50-104, then a mortgagee or its trustee could not impose any delay of 31-59 days without running afoul of the ASFA. Even if the Court were to conclude that a literal reading of the statute implied such a requirement—which it does not—it would disregard that reading. A literal application of

10

statutes, even those strictly construed, "which leads to absurd consequences should be rejected where an alternative interpretation effects the statute's purpose." *Henson*, 319 Ark. at 496. Finally, the Court would note that Ark. Code Ann. § 18-50-104(a), which includes the 60-day provision, was added by the Arkansas legislature in 2011. *See* Act 885 (2011). The Court cannot fathom that when the legislature added § 18-50-104(a) to the ASFA it intended to impact § 18-50-107 such that postponements of between 30 and 60 days would be prohibited by the Act.

For these reasons, the Vaughns' allegation that Wells Fargo violated Ark. Code Ann. § 18-50-104(a)(2)'s 60-day delay requirement fails to state a claim upon which relief may be granted. The Court expresses no opinion on the merits of the Vaughns' additional ASFA claims.

### IV. CONCLUSION

For the reasons stated herein, Wells Fargo's Partial Motion to Dismiss (Doc. 8) is **GRANTED**.

**IT IS SO ORDERED** on this 25th day of April, 2017.

/s/ Timothy L. Brooks
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE